**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOCAL UNION NO. 863 I. B. OF T. PENSION FUND and ALPHONSE RISPOLI, TRUSTEE; BRUCE VIVADELLI, TRUSTEE; DEWEY CANNELLA, TRUSTEE; LOUIS SANCHEZ, TRUSTEE; and DAVID MARKOWITZ, TRUSTEE, | Civil Action No.: 11-1068 (JLL) |
| Plaintiffs, | |
| v. | **OPINION** |
| RLB FOOD DISTRIBUTORS, L.P., PAT MELE, and FLOYD AVILLO, | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants RLB Food Distributors, L.P. ("RLB"), Pat Mele ("Mele") and Floyd Avillo ("Avillo")'s Motion to Dismiss Plaintiffs Local Union No. 863 I. B. of T. Pension Fund ("Pension Fund")'s Amended Complaint as against Defendants Mele and Avillo, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Entry No. 12]. The Court has considered the submissions of the Parties and rules on the motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

## I. BACKGROUND

The Court accepts as true the factual allegations in Plaintiffs' Amended Complaint for the purposes of considering Defendant's Motion to Dismiss, an acceptance

1

reflected in this Court's recitation of the factual background giving rise to the instant Motion. Plaintiffs are a multiemployer defined-benefit employee Pension Fund within the meaning of ERISA and its trustees.[1] Plaintiff Pension Fund provides retirement and death benefits to eligible employees of employers required to contribute to the Pension Fund pursuant to one or more collective bargaining agreements ("CBAs") with Local Union No. 863, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Helpers and Warehousemen of America (the "Union"). (Am. Compl., at ¶ 4). Defendant RLB Food Distributors, L.P. ("RLB") is a corporation organized and operating under the laws of the State of New Jersey with its principal place of business in West Caldwell, New Jersey. (Id., at ¶ 7). Defendants Mele and Avillo are owners and officers of RLB who Plaintiffs allege are fiduciaries with respect to those assets of the Pension Fund comprising the amounts due and owing from RLB to the Pension Fund. (Id., at ¶ 1).

Defendant RLB and the Local Union were and are parties to one or more of the CBAs pursuant to which RLB was and is allegedly required to make periodic contributions to the Pension Fund on behalf of its employees covered by the applicable CBAs. (Id.). Defendant RLB is also an employer responsible for contributing to the multiemployer Pension Fund in accordance with the Pension Plans established with the Local Union. (Pl. Br. Opp'n Defs. Mot. to Dismiss, Decl. of Flavio L. Komuves ("Komuves Decl."), Exs. C and D). However, Plaintiffs' Complaint alleges that between 2003 and 2008, the Pension Fund had accumulated funding deficiencies which failed to

---

[1] The Pension Fund is defined and regulated under ERISA Sections 3(3), 3(35) and 3(37), 29 U.S.C. §§ 1002(3), 1002(35), and 1002(37), respectively. Named Plaintiffs Trustees of the Pension Fund brought this action in their capacity as trustees and are fiduciaries of the Pension Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

meet ERISA's minimum funding requirements for their respective Plan Years, each Plan Year beginning on September 1 of each calendar year and ending on August 31 of the following calendar year. (Am. Compl., at ¶¶ 12-19). Specifically, Plaintiffs assess the minimum funding deficiencies as follows: as of August 31, 2003, an amount of $18,675,391 (Id., at ¶ 13); as of August 31, 2005, an amount of $42,281,203 (Id., at ¶ 14); as of August 31, 2006, an amount of $89,699,427 (Id., at ¶ 15); as of August 31, 2007, an amount of $146,239,211 (Id., at ¶ 16); and as of August 31, 2008, an amount of $158,740,759 (Id., at ¶ 17).

On April 9, 2008, Plaintiff Pension Fund sent notice to RLB that RLB's owed proportionate share of the Pension Fund's accumulated funding deficiency through August 31, 2007 came to the amount of $1,429,717, and Plaintiff demanded payment from RLB with interest. (Id., at ¶ 18). However, Plaintiff allegedly received no payment, so on July 25, 2008, Plaintiff Pension Fund sent another letter to RLB demanding payment of their updated proportionate share. (Id.). Plaintiff sent a third letter on November 26, 2008, demanding that RLB pay its 2008 minimum funding deficiency, with interest, of $728,255, if paid by January 1, 2009. (Id.). Again, Plaintiff allegedly received no payment despite several subsequent occasions in which Plaintiffs requested the payment verbally and in writing. (Id.). Plaintiffs currently claim that, as of February 28, 2011, the payment due, with interest, for the 2007 deficiencies is $2,024,443, and the amount due for 2008, also with interest as of February 28, 2011, is $851,795, for a total of $2,876,238, with interest continuing to accrue. (Id., at ¶ 19).

Plaintiffs commenced this action by filing a Complaint on February 24, 2011 against Defendant RLB seeking to collect amounts allegedly owed by Defendant

3

necessary to satisfy the minimum funding requirements imposed upon contributing employers to the Pension Fund by Section 302 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1082. [Docket Entry No. 1]. On October 31, 2011, Plaintiffs filed an Amended Complaint adding Defendants Pat Mele and Floyd Avillo as "fiduciaries with respect to the Pension Fund in that they exercise authority, discretion, or control over the management or disposition of Pension Fund assets, within the meaning of 29 U.S.C. § 1002(21)(A)(i)." [Docket Entry No. 9]. The Amended Complaint also added an additional count, Count III, for Breach of Fiduciary Duty under ERISA § 409. On November 29, 2011, Defendants filed the instant Motion to Dismiss Plaintiffs' First Amended Complaint as against Defendants Mele and Avillo individually, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Entry No. 12].

## II. LEGAL STANDARD

In reviewing motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); see also Bell Atl. Corp. v. Twombly, 127 S.Ct. 1995, 1965 (2007). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(citing Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"; mere consistency with liability is insufficient. Id. "[A]

4

court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). During a Court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities: "This liberality is expressed throughout the Federal Rules of Civil Procedure and is enshrined in a long and distinguished history . . . . An inadvertent mistake in pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." Lundy v. Adamar of New Jersey, 34 F.3d 1173, 1186 (3d Cir. 1994). Further, courts will not dismiss for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 909 n.10 (1990); Common Cause v. Pennsylvania, 558 F.3d 249 (3d Cir. 2009). With this framework in mind, the Court turns now to Defendant's motion.

In reviewing a motion to dismiss, a district court may consider documents integral to the claim or explicitly relied on in presenting the claim without converting the motion to dismiss to a motion for summary judgment. In re Rockefeller Ctr. Prps., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Since this matter concerns an ERISA claim and requires the interpretation of governing documents of a Pension Fund, attached agreements and Plan documents regulating the administration of the Fund are integral to the cause of action asserted and will be reviewed without converting Defendants' Motion to Dismiss into a motion for summary judgment.

### III.  DISCUSSION

Section 302 of ERISA provides that a multiemployer pension fund is required to meet a minimum funding standard, and this requirement is satisfied in a plan year if "the employers make contributions to or under the plan for any plan year which, in the aggregate, are sufficient to ensure that the plan does not have accumulated funding deficiency under section 304 as of the end of the plan year." 29 U.S.C. § 1082(a)(2)(C). Said accumulated funding deficiency is "the amount, determined as of the end of the plan year, equal to the excess (if any) of the total charges to the funding standard account of the plan for all plan years (beginning with the first plan year for which this part applies to the plan) over the total credits to such account for such years." 29 U.S.C. § 1084(a)(1). Basically, if the Pension Fund's income in a given Plan Year is *less* than the obligations it incurred or paid, then its funding account incurs a "minimum funding deficiency" which constitutes the shortfall of income to obligations for that year. The amount required by the minimum funding requirements of Section 302 is to be paid by the employers responsible for making contributions to or under the plan. 29 U.S.C. § 1082(b)(1).

Defendants make two arguments in support of their Motion to Dismiss Plaintiffs'
First Amended Complaint as against Defendants Mele and Avillo: 1) said named
Defendants are not liable for "delinquent contributions" since "accumulated funding
deficiencies" do not constitute contributions under ERISA § 515, and, in any case,
Defendants Mele and Avillo are not "employers" against whom delinquent contributions
can be sought; and 2) Defendants Mele and Avillo are not fiduciaries over "assets" of the
relevant Pension Plan. (Defs. Br. Supp. Mot. to Dismiss, at 2-5). The Court will address
each argument in turn.

### A. "Delinquent Contributions"

Section 515 of ERISA provides that

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained
> agreement shall, to the extent not inconsistent with law, make such contributions
> in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In this matter, the Parties are bound by two sets of documents: 1)
CBAs effective April 1, 2003 and again April 1, 2008, signed by RLB and the Local
Union, governing the provision of pension benefits and setting forth the rates of
contribution (Komuves Decl., Ex. A, 2003 CBA, art. XXXIII; Ex. B., 2008 CBA, art.
XXXIII); and 2) Pension Fund documents under which the Pension Fund operates,
including the "Local Union NO. 863 I.B. of T. Pension Plan Restated as of September 1,
2001" (the "2001 Restated Plan"), and the "Local Union No. 863 I.B. of T. Pension Plan
Restated as of September 1, 2008" (the "2008 Restated Plan"), which incorporates and
references the December 16, 1975 Agreement and Declaration of Trust (the "1975
Agreement"). (Komuves Decl., Exs. C and D; Pls. Opp'n Br. Defs. Mot. to Dismiss, at

2-3).  The Parties disagree as to the scope of the terms of these agreements as they relate

to employer obligations mandated under the above-cited Section 515 of ERISA.

For their part, Plaintiffs state in their Amended Complaint that "RLB's allocable

portions of the Pension Fund's accumulated funding deficiencies for the Plan Years

ended August 31, 2003, 2005, 2006, 2007, and 2008, constitute contributions for

purposes of Section 515 of ERISA, 29 U.S.C. § 1145, because they are minimum funding

contributions which RLB, Mele and Avillo are obligated to make under the terms of the

Pension Fund's Plan, and by failing to make the minimum funding contributions RLB,

Mele and Avillo have violated ERISA Section 515."  (Am. Compl., ¶ 27).  Plaintiffs

specifically point to two provisions of the Restated Plans—Sections 2.13 and 2.18—to

support their contention that Defendants are indebted to the Pension Fund for delinquent

contributions.  (Pls. Opp'n Br. Defs. Mot. to Dismiss, at 4).  Those provisions state as

follows:

> **Section 2.13**.  "Contributing Employer" shall mean any Employer in any industry
> who enters into an agreement with the Union which requires Employer Payments
> to this Pension Plan on behalf of its employees or is subject to a participation or
> project agreement requirement Employer Payments to the Fund . . . . An
> Employer shall remain a Contributing Employer, with the obligation to make
> Employer Payments to this Pension Plan, to the full extent of the law, and shall
> only cease to be obligated if it has fully complied with all legal requirements
> necessary to sever such obligation.
>
> **Section 2.18**.  "Employer Payments" shall mean payments owed or made by
> Contributing Employers to the Pension Plan as required by an agreement and/or
> the Agreement and Declaration of Trust.  Employer Payments shall be deemed
> property of the Pension Plan, and entitlement to them shall vest in the Pension
> Plan.

(Komuves Decl., Ex. D, "2008 Restated Plan," at 4).  Based on the language of these

agreements, Plaintiffs make two arguments regarding Defendants' delinquent

contributions: 1) Employer Payments to the Pension Fund are Pension Fund assets, and

those include not just monies in the Pension Fund's accounts, but all sums that are owing but unpaid; and 2) Employer Payments to the Pension Fund applies not only to contributions due directly under a CBA, but also to monies due to the "full extent of the law" as stated in Section 2.13 of the Restated Plans, including those minimum funding deficiencies owed under ERISA Section 302, 29 U.S.C. § 1082 cited above, which labels and refers to the minimum funding payments regulated therein as "contributions." (Pls. Opp'n Br. Defs. Mot. to Dismiss, at 4).

Defendants argue, on the contrary, that to the extent they are considered "employers," they are only obligated by the CBA and not by any terms set forth in the Trust Agreement for the Fund since neither RLB nor RLB's signatory representatives agreed to be bound by said Trust Agreement. (Defs. Repl. Br., at 3). Further, the obligations of the employer, if any, are established under ERISA § 515, which circumscribes an employer's obligations to the terms of a Plan and/or CBA. (Defs. Br. Supp. Mot. to Dismiss, at 3). Since Defendants claim to only be bound by the CBA, any accumulated funding deficiency which may arise under ERISA § 302 are not "contributions" concerning which they could be found delinquent since such contributions were not bargained for by the Parties in the CBA, and throughout the life of the CBA, such "contributions" are not assets of the plan. (Id.). Specifically, Defendants claim, "employer contributions are set by the bargaining parties and are, th[u]s, set for the term of the collective bargaining agreement. If the contributions are not paid in the required amount, then the employer is 'delinquent.' If the contributions made in a timely manner are insufficient to meet the funding requirements of ERISA § 302, that does not equate to a delinquency in required contributions." (Id.). Finally, Defendants point to the

language of Section 2.18 of the Restated Plans limiting any obligatory contributions by employers to those "required by an agreement and/or the Agreement and declaration of Trust. This definition, by its own limitations, applies only to contributions owed by the collective bargaining agreement or by the term [*sic*] of the Declaration of Trust. Not only are 'accumulated funding deficiencies' NOT referenced in the collective bargaining agreements, but they are NOT referenced in the declaration of Trust." (Defs. Repl. Br., at 3).

The key question thus before the Court is whether the terms of the agreements binding on the Parties incorporate contributions made obligatory upon employers under Section 302 of ERISA. While Defendants concede it is a Party to the CBAs signed with the Local Union and is bound thereby, the Court also finds that Defendant RLB is bound by the Restated Plans governing the Parties' obligations as they relate to the Pension Fund. This is because the CBA binding RLB and the Local Union explicitly references and incorporates those documents:

> For the objects and purposes set forth in a certain Agreement and Declaration of Trust, executed between the Employer and the Union and any Amendments or Supplements thereto, the Employer agrees to contribute to the Pension Fund of the Local Union . . . as follows: . . . The contributions to the Fund and all accumulations thereon shall be used to provide for Pension or retirement benefits as provided in a plan selected by the Trustees to the Fund and to be used for such other purposes set forth in this Agreement and Declaration of Trust governing the Trustees in the administration of the Pension Fund.

2003 and 2008 CBAs, art. XXXIII, "Introductory Paragraph" and ¶ 2. Further, RLB as a signatory to the CBA acknowledges therein that it is subject to the Trustees' rights under the Restated Plans and the Declaration of Trust. (2003 CBA, art. XXXIII, ¶ 11; 2008 CBA, art. XXXIII, ¶ 7 ("The Trustees shall have such rights and duties as may be set forth in the Trust Agreement"). Thus, RLB as the employer bound by the relevant CBAs

and is also bound under Article XXXIII of said CBAs by the Trust Agreement and the Restated Plans which found and govern the Pension Fund.  For the purposes of Defendants' Motion to Dismiss, therefore, the governing documents include both the CBAs and the Restated Plans which incorporate and reference the Trust Agreement, and it is based on their terms that the Court must determine whether RLB and its fiduciaries are obligated to pay "minimum funding deficiencies" into the plan.

Defendant RLB's obligations to comply with federal statutes regulating the instant multiemployer Pension Fund under ERISA, including Section 302 and any other relevant sections of ERISA, are referenced in two provisions in the Restated Plans and one provision in the CBA, respectively.  In the Restated Plan, Section 2.18 states that Contributing Employers to the Pension Fund shall make payments to said Fund in accordance with "an agreement and/or the Agreement and Declaration of Trust." (Restated Plans, Section 2.18).  These "Employer Payments" are "deemed property of the Pension Plan, and entitlement to them shall vest in the Pension Plan."  (Id.).  Thus, any payments found obligatory within the CBA or the Trust Agreement, incorporated by reference into the Restated Plans, are property of the Pension Plan.  An employer bound by such documents, including RLB, "shall remain" by their terms "a Contributing Employer, with the obligation to make Employer Payments to this Pension Plan, **to the full extent of the law**, and shall only cease to be obligated if it has fully complied with all legal requirements necessary to sever such obligations."  (Komuves Decl., Ex. D, "2008 Restated Plan," at Section 2.13)(emphasis added).  The Restated Plans thus extend the obligations on contributing employers to all payments and contributions required under federal law.  This is confirmed in the CBAs signed by the parties, which state:

"The Union agrees to furnish to the Employer a copy of the Trust indenture and Plan, which Trust indenture and Plan will comply with **all requirements of Federal and State statutes** and regulations governing said instruments." (2003 CBA, art. XXXIII, ¶ 13; 2008 CBA, art. XXXIII, ¶ 9). Section 515 of ERISA explicitly obligates employers making contributions under multiemployer plans to pay contributions into said plans in accordance with the terms and conditions of such plans.

Section 302 of ERISA, as cited above, is a federal statute in accordance with which the payments into the Pension Fund must comply, and it clearly requires that multiemployer plans defined within the meaning of ERISA meet the minimum funding standard laid out therein and requires such contributions "be paid by the employer responsible for making contributions to or under the plan." 29 U.S.C. § 1082.

In considering the effects of CBAs on employer's obligations under Section 302, courts have consistently found that CBAs cannot shield employers' minimum funding obligations under that Section, but CBAs may supplement or add to such minimum obligations should the parties seek to negotiate upwards from statutory minimums. See, e.g. Murphy v. Heppenstall Co., 635 F.2d 233, 239 (3d Cir. 1980)("ERISA established 'minimum standards' for pension payments due retired employees. Congress endeavored to guarantee retirees at least a portion of the payments a terminated pension plan would have afforded. It is not inconsistent with the statutory scheme to permit employees to recover directly from the employer any additional benefits to which the employer has contractually obligated itself"); International Union, United Auto., etc. v. Keystone Consol. Industries, Inc., 793 F.2d 810 (7th Cir. 1986)(affirming a district court's enforcement of an arbitrator's award requiring defendant employer to make annual

12

contributions to a pension plan pursuant to a CBA, even though the employer had obtained a waiver of the minimum funding obligation imposed by Section 302); Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp., 617 F.3d 54 (1st Cir. 2010)(holding that an employer could not shield itself from liability under Section 302 simply by performing its obligations under the CBA). In this case, the CBAs and Restated Plans are silent as to minimum funding deficiencies and requisite employer contributions, neither waiving minimum employer payments nor supplementing the statutory minimum under ERISA with any additional payments. To the extent that Plaintiffs have alleged that those agreements and governing documents are binding on Defendant RLB as a Contributing Employer, and that those agreements and governing documents must comply with the minimum standards set by federal law, the Court finds that Plaintiffs have sufficiently stated an ERISA claim for delinquent contributions.

   B.  Defendants Mele and Avillo's Fiduciary Status

   Under Section 515, ERISA imposes liability on any "employer" that fails to make contributions to an employee benefit fund as required by a CBA. See 29 U.S.C. § 1145. ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Individual officers, shareholders or managers can be held liable for corporate ERISA obligations in two ways: 1) by a plaintiff's piercing of the corporate veil; or 2) personal liability as a fiduciary. Since the Parties limit their argumentation to Defendants Mele and Avillo's fiduciary status, the Court will not construe Plaintiffs' Complaint as attempting to assert liability over said Defendants by piercing the corporate veil.

Under ERISA, a "fiduciary" with respect to a pension plan is a person who "exercises any discretionary authority or discretionary control respecting management of such plan or any authority or control respecting the management or disposition of assets," or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii). ERISA allows for personal liability on the part of the fiduciaries of a plan as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this [Act] shall be personally liable to make good to such plan any losses to the plan resulting from each breach.

29 U.S.C. § 1109(a). The Third Circuit has held that an individual can be held liable as a fiduciary pursuant to ERISA if: (1) the alleged unpaid contributions were "plan assets"; and (2) the individual "exercise[ed] authority or control over the management or disposition of [such] assets." In re Mushroom Transp. Co., Inc., 382 F.3d 325, 346 (3d Cir. 2004)(citing Bd. Of Trs. Of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 274 (3d Cir. 2001)). "Both elements must be proven in turn; if the unpaid contributions are determined not to be plan assets, no liability can attach to the individual defendants." Local Union No. 98 IBEW v. RGB Servs., LLC, 2011 U.S. Dist. LEXIS 8945, * 14 (E.D. Pa. Jan. 28, 2011)(citation omitted).

### i. "Plan Assets"

Plaintiffs' Complaint alleges that RLB's unpaid contributions to the Pension Fund were "plan assets" pursuant to the Restated Plans. To determine if unpaid employer contributions are plan assets, a court must examine the agreement that created the benefit plan. See id., at * 15; Carpenters Combined Funds ex rel. Klein v. Klingman ("Klingman

14

I"), 2010 U.S. Dist. LEXIS 88263, at * 3 (W.D. Pa. Aug. 25, 2010); Local Union No. 98,

IBEW v. Garney Morris, 2004 U.S. Dist. LEXIS 9528, at * 4 (E.D. Pa. May 21, 2004).

Specifically, in its plan asset determination, a court looks to "whether the contract or trust

agreement explicitly states that unpaid contributions become 'plan assets' as soon as they

are due and owing" and "[i]f a trust agreement does not explicitly designate unpaid

contributions as 'plan assets,' courts are reluctant to so designate them." Roofers Local

30 Combined Welfare Fund v. Lentz McGrane, 2005 U.S. Dist. LEXIS 7084, at *3 (E.D.

Pa. Feb. 21, 2005); see also Carpenters Combined Funds ex rel. Klein v. Klingman

("Klingman II"), 2010 U.S. Dist. LEXIS 88263, at *3 (W.D. Pa. Aug. 25, 2010)("[A]

[p]laintiff has adequately pled that the unpaid funds constitute 'plan assets'" where the

governing trust agreement "specifies that employer contributions become 'vested' and

become 'plan assets' immediately when due").  In Klingman II, the court held that the

"due and owing" language in plan documents which stated that "[t]itle to all monies paid

into and/or due and owing such Fund shall be vested in the Trustees of such Fund" "can

indicate the immediate vesting of such funds, making them assets of the plan." Klingman

II, 2010 U.S. Dist. LEXIS 88263, at * 3.  However, "unambiguous language that gives

rise to contractual obligations for payment of money due" can "support[] the conclusion

that unpaid contributions are 'plan assets' under ERISA." Roofers, 2005 U.S. Dist.

LEXIS 7084, at *4.  Language that defines the plan to include payments owed but not

made may "support the inclusion of unpaid contributions" as plan assets. Trs. of Nat'l

Elevator Indus. Pension v. Lutyk, 140 F. Supp. 2d 407, 411 (E.D. Pa. 2001).

Here, the Restated Plans state that employer contributions "**owed** or made by

Contributing Employers to the Pension Plan as required by an agreement and/or the

15

Agreement and Declaration of Trust . . . shall be deemed property of the Pension Plan, and entitlement to them **shall vest in the Pension Plan**." (Komuves Decl., Ex. D, "2008 Restated Plan," at Section 2.18)(emphasis added). At the motion to dismiss stage, the Court need not determine whether unpaid contributions to the Pension Fund were in fact plan assets. To determine whether unpaid employer contributions become plan assets requires an examination of the intent of the parties as expressed in their agreement, which is not resolved on a motion to dismiss. See RGB Servs., 2011 U.S. Dist. LEXIS 8945, at * 19; SEIU, Dist. 1199P v. Monsour Med. Ctr., Inc., 555 F. Supp. 2d 566, 569-70 (W.D. Pa. 2008). Therefore, at this stage of the litigation, and in accordance with other district courts that have considered almost identical language as that found in Plaintiffs' Complaint and plan agreements, the Court finds that Plaintiffs' Complaint along with its attachments sufficiently alleges that RLB's unpaid contributions to the Pension Fund were plan assets.

### ii.  Defendants' Authority or Control over the Management or Disposition of Plan Assets

An individual is a fiduciary with respect to an employee benefit plan pursuant to ERISA if "he exercises . . . any authority or control respecting management or disposition of its assets," and "one need not have discretion in exercising authority or control over the management or disposition of plan assets in order to qualify as a fiduciary under § 1002(21)(A)(i)." See 29 U.S.C. § 1002(21)(A)(i); Mushroom Transp., 382 F.3d at 346 (citation omitted). Fiduciary liability attaches to an individual corporate officer only "'to the extent' that [the particular] person functions in a fiduciary capacity." Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3d Cir. 2003)(quoting 29 U.S.C. § 1002(21)(A),

and citing Glaziers & Glassworkers Union Local No. 252 v. Newbridge Sec., Inc., 93
F.3d 1171, 1180 (3d Cir. 1996)).

        To determine whether a complaint sufficiently alleges that Defendants Mele and
Avillo individually exercised authority or control over the unpaid contributions owed to
the Pension Fund, the Court may consider the "factual allegations" of the Complaint.
Miller v. Mellon Long Term Disability Plan, 721 F. Supp. 2d 415, 429 (W.D. Pa. 2010).
The Complaint alleges that Defendants Mele and Avillo are "the owners and officers of
RLB who are fiduciaries with respect to those assets of the Pension Fund comprising the
amounts due and owing from RLB to the Pension Fund," and, further, that "RLB  has
admitted that '[f]inancial decisions related to the company [RLB] are made by Pat Mele
and Floyd Avillo, the owners and officers of the Company [RLB].'  Avillo, in fact,
signed the April 1, 2008 Collective Bargaining Agreement between RLB and Local 863."
(Am. Compl., at ¶¶ 1, 32).  The Complaint also specifically states that Defendants Mele
and Avillo "now exercise, and at all times relevant hereto, did exercise (1) discretionary
authority or discretionary control respecting the management of the Pension Fund; and
(2) authority or control respecting the management or disposition of Pension Fund assets.
In particular, Mele and Avillo exercise, and at all times relevant hereto, did exercise,
discretionary authority, discretionary control, authority and/or control over that property
of the Pension Fund which included the payments owed by RLB to the Pension Fund."
(Am. Compl., at ¶ 31).  Accepting these factual allegations as true, this Court finds that
the Complaint sufficiently states that Defendants Mele and Avillo exercised authority or
control over the unpaid contributions owed to the Pension Fund.  See Klingman I, 2010
U.S. Dist. LEXIS 32718, at * 2 ("The complaint alleges that, as the owner and principal

                                                                                      17

officer of R.K. Millwork, Klingman falls within th[e] definition [of an ERISA fiduciary]. At this stage of the case, that allegation must be taken as true. Klingman will have an opportunity to renew his contentions, if warranted, at the summary judgment stage . . . ."). For these reasons, the Court denies Defendant Mele and Avillo's Motion to Dismiss Plaintiffs' Amended Complaint as against them.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have sufficiently stated a plausible claim as against Defendants Mele and Avillo for delinquent contributions and for breach of fiduciary duty pursuant to ERISA §§ 515 and 409. Defendants Mele and Avillo's Motion to Dismiss Plaintiff's First Amended Complaint as against them is therefore **DENIED**.  An appropriate Order accompanies this Opinion.

DATED: January 4, 2012

Jose L. Linares
United States District Judge